UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:07CV-P77-R

**JAMES CARL HIGGS**                                                                              **PLAINTIFF**

v.

**TRANSPORTATION SPECIALIST SANFORD** *et al.*                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motions for summary judgment. Also before the Court is Plaintiff's motion to compel Defendants to fully respond to his discovery requests. Upon review, for the reasons set forth below, the Court will grant Defendant Sanford summary judgment, deny the remaining Defendants' summary judgment, and grant Plaintiff's motion to compel.

**I. SUMMARY OF CLAIMS**

On August 11, 2006, Plaintiff was released from the Indiana Department of Corrections' custody. At the time of his release, a detainer was lodged against him by the Commonwealth of Kentucky due to a 1999 parole violation. As such, Plaintiff was turned over to the Transportation Corporation of America ("TransCo"), a company that contracts with the Commonwealth of Kentucky to transport prisoners from one jurisdiction to another. Defendant Transportation Specialist Sanford was employed by TransCo to work on the bus that was to transport Plaintiff.[1]

---

[1] The record has been somewhat unclear as to Defendant Sanford's sex. Plaintiff identified Defendant Sanford as a male in his complaint. In Defendant Sanford's first answer, counsel stated that Defendant Sanford was female. However, Defendant Sanford later filed an amended answer in which counsel stated that Defendant Sanford is male. Based on Defendants' assertions in the first answer, Plaintiff filed a motion to amend his complaint to correct his identification of Defendant Sanford's sex. The Court granted Plaintiff's motion. Now, however, based on Defendant Sanford's amended answer and subsequent filings, it appears that Defendant Sanford is male. Defendant Sanford's sex is of no legal significance. Nevertheless, the Court

While boarding the bus, Plaintiff tripped and fell. Plaintiff contends that his fall was accidental. Defendant Sanford and other witnesses maintain that Plaintiff fell intentionally so that he would land in the lap of a female inmate seated in the front of the bus. According to witnesses, Plaintiff claimed to have acted intentionally because he "had not touched a woman in years." Plaintiff was then escorted to the male section in the back of the bus. Based on the witness statements submitted by the parties, it is undisputed that Plaintiff was speaking loudly and disrupting Agent Sanford's attempts to sleep in a bunk in the back of the bus.[2] Plaintiff apparently requested water and use of the restroom in a very loud voice causing Defendant Sanford to rouse himself and approach Plaintiff. Defendant Sanford told Plaintiff that he needed to calm down. As a result, Plaintiff admits that he and Defendant Sanford became involved in a verbal disagreement. As Plaintiff moved toward the restroom, Defendant Sanford perceived that Plaintiff was advancing toward him. According to one witness, Karen Proteau, Plaintiff and Defendant Sanford were "face to face." Defendant Sanford then shouted "you are in my face" and sprayed Plaintiff with pepper spray. Plaintiff fell down and was sprayed again. Thereafter, he was carried/dragged off of the bus by Defendant Sanford and another officer.

Plaintiff received a cut to his head during the altercation that was bleeding. After being removed from the bus, Plaintiff was taken to see an Indiana prison nurse. While he was waiting to see the nurse, Defendant Sanford wiped Plaintiff's face off with a wet cloth to decontaminate him of the pepper spray. The nurse cleaned Plaintiff's wounds, examined him, and determined that his vital signs were normal. Thereafter, Plaintiff was reloaded on the bus, placed in

---

observes that based on its review of the entire record to date it appears that Defendant Sanford is male, and the Court will refer to him as such.

[2]Defendant Sanford was apparently the designated alternate bus driver for the trip and was supposed to sleep before his driving shift commenced later that evening.

segregation, and transported to Kentucky.

Upon arrival in Kentucky, Plaintiff was delivered to the Christian County Jail on August 12, 2006. At that time, jail officials were told by the TransCo officers that Plaintiff had assaulted officers on the bus and requested that Plaintiff be placed in segregation for the duration of his detainment at the Christian County Jail. Defendants Diedrich and Campbell then searched and "dressed out" Plaintiff before placing him in segregation. They reported no problems from Plaintiff during this process.

Plaintiff was supposed to remain at the Christian County Jail for only about twelve hours before being reloaded on the bus for transport to a state facility. Shortly before his scheduled release time, jail records indicate that Plaintiff attempted to "fight" with jail officials. It is unclear whether this altercation was physical in nature. The jail records further indicate that Defendants Bruce and Grise took Plaintiff to the ground. The officers then carried Plaintiff to be "dressed out" before being placed back on the bus. According to jail records, when Plaintiff began to again struggle, Defendant Deluga utilized his taser gun. Defendant Deluga explains that one "'five second drive stun' was utilized [which involves] placing of a taser device against the skin of the non-complaint inmate. No prongs were discharged from the device and as a result, there was no penetration of Plaintiff's skin."[3]

After this incident, TransCo officials refused to transport Plaintiff on the bus and instructed Christian County Jail personnel to continue to hold Plaintiff until alternate arrangements could be made for Plaintiff's transport to the Roederer Correctional Complex. Jail

---

[3]Defendant Deluga's report is somewhat inconsistent regarding the number of times the taser was used on Plaintiff. In the written portion of the report, Defendant Deluga indicates that he tasered Plaintiff only once. On the diagram portion of the report, however, Defendant Deluga drew two circles, one in the back left neck area and one in back right rib cage area, indicating that he tasered Plaintiff at least twice.

officials then placed Plaintiff in a restraint chair monitoring him every fifteen minutes.

Plaintiff's version of the events differs. He claims that he did not attempt to fight with the Christian County Jail officials that removed him from segregation on August 12, 2006. Instead, Plaintiff alleges that he tripped and fell because the officers were transporting him down the hall too quickly. He claims that he had difficulty getting to his feet after his fall because he was in restraints. Plaintiff maintains that the officers seized this opportunity to drag him down the hall and then to take turns tasering him. Plaintiff alleges that the taser caused him pain, bruising, and "mental and psychological suffering." Plaintiff left the Christian County Jail on August 13, 2006. He was then transported to the Roederer Correctional Complex. Plaintiff claims that officials at Roederer took pictures of his injuries upon admission to their facility.

Plaintiff then initiated this 42 U.S.C. § 1983 action. On initial review of the complaint, the Court allowed Plaintiff's Eighth Amendment Cruel and Unusual Punishment claims to proceed for further development as against Defendant Sanford and the Defendant Christian County Jail Deputies (Deluga, Grise, Turner, Glover, Campbell, Diedrich, and Bruce) based on their alleged physical assaults against Plaintiff. All of these remaining Defendants have moved for summary judgment. Plaintiff has responded, and the motions are ripe for consideration. Also, ripe for consideration is a motion to compel filed by Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. ANALYSIS OF SUMMARY JUDGMENT MOTIONS

"Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The plaintiff is not required to show a serious injury, although the extent of his injuries may be considered in determining whether the use of force was wanton and unnecessary. *Id.* at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline

5

and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979). "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 321-22.

**A.      Defendant Sanford's Motion for Summary Judgment**

It is undisputed that Plaintiff and Defendant Sanford were embroiled in a verbal dispute concerning Plaintiff's loud talking in the back of the bus. Perceiving that Plaintiff had advanced toward him and frustrated that Plaintiff would not heed his verbal requests to quiet down, Defendant Sanford sprayed Plaintiff with pepper spray. A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Thomas v. Greene*, No. 99-3179, 1999 U.S. App. LEXIS 34054 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim upon finding that he was uncooperative and threatening prior to being pepper sprayed); *White v. Fowler*, 881 F.2d 1078 (6th Cir. 1989) (holding that officer was entitled to summary judgment on Plaintiff's excessive force claim even though Plaintiff was shackled when officer sprayed him with mace on a bus because the officer needed to restore "discipline and security to the bus"); *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop); *Baldwin v. Stalder*, 137 F.3d 836, 838, 841 (5th Cir. 1998) (holding that jail guards did not use excessive force when they sprayed a two-second burst of chemical mace into a bus filled with prisoners who had continued jumping on the seats, spitting at officers outside the bus,

rocking the bus, and otherwise causing a disturbance after three times being told to stop); *Williams v. Benjamin*, 77 F.3d 756, 762-63 (4th Cir. 1996) (holding that the use of chemical mace was not excessive when a prisoner disobeyed an order to stop throwing water at a guard and then questioned the guard's second order to remove his arm from his cell's food service window); *Jones v. Shields*, 207 F.3d 491, 495-96 (8th Cir. 2000) (holding that correctional officer's use of a pepper-based chemical spray resulted in *de minimus* injury and was not "repugnant to the conscience of mankind" when used to subdue a "recalcitrant prisoner" locked in his cell or in handcuffs).

Additionally, Defendant Sanford took prompt action to ensure that Plaintiff was decontaminated and that he received medical attention after the incident. This fact coupled with the relatively minor nature of Plaintiff's injuries suggests that Defendant Sanford's force was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Defendant Sanford is entitled to summary judgment.

**B.     The Christian County Jail Defendants' Motion for Summary Judgment**

The Court now turns to Plaintiff's claims against the Defendant Christian County Jail Deputies: Deluga, Grise, Turner, Glover, Campbell, Diedrich, and Bruce. Plaintiff alleges that these Defendants violated his rights by shackling him, tasering him, and otherwise humiliating him. Plaintiff claims that the force used by Defendants was excessive under the circumstances. Defendants counter that they did not use excessive force and in any event that they are entitled to qualified immunity.

The Court must accept Plaintiff's version of events as true on summary judgment. According to Plaintiff, he accidently fell to the ground after being taken out of his cell. Plaintiff

claims that instead of helping him to his feet, the Defendants seized his fall as a opportunity to drag him down the hall and then take turns using the taser on him. While a taser may be used to restore order, its purpose is not to inflict pain or to embarrass or humiliate. The manner in which Plaintiff states that Defendants used the taser is unquestionably unreasonable. The Court can think of no legitimate reasons for Defendants to have "taken turns" tasering Plaintiff. If Plaintiff's verison of events is accepted as true, it appears that Defendants use of the taser was wanton, sadistic, and not a good faith effort to restore discipline. As such, Defendants are not entitled to summary judgment. *See Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (holding that district court properly denied defendants' summary judgment because even though plaintiff's conduct was reprehensible, the deputy defendant's use of the taser gun was more to inflict pain than to deter conduct); *McCline v. Roose*, 1:07 CV 0545, 2009 U.S. Dist. LEXIS 17353 (N.D. Ohio Mar. 6, 2009) (denying defendant summary judgment because viewing the evidence in the light most favorable to the plaintiff "a jury could find that Officer Roose's use of the taser amounted to excessive force" where the plaintiff was unable to rise to feet after falling due to his weight and arthritis and because he was handcuffed).

   Generally, public officials performing discretionary functions are entitled to qualified immunity and are protected from defending a § 1983 action when their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity attaches to an officer's conduct is a legal question, to be determined by the judge prior to trial, assuming that the question does not depend upon a jury determination of contested material facts. *Walton v. City of Southfield*, 995 F.2d 1331, 1335 (6th Cir. 1993). Qualified immunity, when applicable, is not simply a defense to liability in the underlying case, but it provides immunity from suit

altogether, shielding officials from the burdens of discovery and costs of trial. *Comstock v. McCrary*, 273 F.3d 693, 702 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Sixth Circuit evaluates qualified immunity claims using a three-part inquiry. *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). First, the court must determine whether the plaintiff has alleged facts which, taken in a light most favorable to him, show that the defendant-official's conduct violated a constitutionally protected right. *Toms*, 338 F.3d at 524. Second, but only if the first inquiry is answered in the affirmative, the court determines whether the right that was violated was clearly established such that a reasonable official, at the time the act was committed, would have understood that his conduct violated that right. *Id.*; *Comstock*, 273 F.3d at 702 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Finally, if the right was clearly established, the court determines whether the plaintiff has alleged sufficient facts and supported his allegations with sufficient evidence to indicate that what the official did was unreasonable in light of the clearly established constitutional right. *Toms*, 338 F.3d at 524.

Courts assess the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, not *ex post facto* with the benefit of 20/20 hindsight. *Graham*, 490 U.S. at 396. The court's reasonableness calculus allows "for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 397. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates [the constitution]." *Id.*

"There is no clearly established precedent in the Supreme Court, the Sixth Circuit, or in Kentucky holding the use of stun guns improper *per se* in the prison context." *Caldwell v.*

*Moore*, 968 F.2d 595, 600 (6th Cir. 1992). Officers are entitled to use them in an appropriate manner to gain control over a resisting subject and to maintain order. *Id.* at 595. However, the Sixth Circuit has repeatedly recognized that the use of non-lethal, temporarily disabling force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting constitutes excessive force. *See Bultema v. Benzie County*, 146 F. App'x 28, 35 (6th Cir. 2005).

Construing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants tasered Plaintiff gratuitously and unreasonably. Plaintiff, handcuffed and shacked, had fallen to the ground. Defendants then allegedly drug him for several feet and then tasered him several times. The clearly established line of authority prohibiting the gratuitous use of nonlethal, temporarily disabling force would be evident to a reasonable officer. Equivalently, a reasonable officer would conclude that the manner in which Defendants allegedly used the taser on Plaintiff was unlawful under the circumstances as viewed in the light most favorable to the Plaintiff. The Court determines that under the facts alleged by Plaintiff, Defendants are not entitled qualified immunity. The Christian County Jail Defendants' motion for summary judgment will be denied.

### IV. MOTION TO COMPEL

Also currently pending before the Court is Plaintiff's motion to compel. In the motion, Plaintiff requests "an order compelling defendants Matt Deluga, Mike Grise, and Ed Campbell to answer interrogatories and requests for production . . . or in the alternative as a request for extension of time in which to file an answer to Defendants' motion for summary judgment." Plaintiff subsequently filed a pretrial memorandum and response to the pending summary judgment motions. Plaintiff's response does not reference a need for more discovery to respond.

Nevertheless, the Court reviewed the discovery requests to determine whether

Defendants should have been compelled to answer them before the Court made a determination on summary judgment. The Court determined that answers to the interrogatories were not necessary for the Court to make a reasoned decision on summary judgment. However, as the Court has denied the Christian County Jail Defendants' motion for summary judgment, Plaintiff is entitled to have Defendants answer (or tender appropriate objections) to his discovery requests. Accordingly, Plaintiff's motion to compel (DN 37) is **GRANTED**.  **To the extent that they have not already done so, Defendants Deluga, Grise, and Campbell are ORDERED to tender responses (answers or objections) to all Plaintiff's outstanding discovery requests within 30 days of the entry of this Order and to file a notice with the Court indicating that they have done so.**

The Court will enter separate Orders consistent with this Memorandum Opinion.

Date:


cc:     Plaintiff, *pro se*
        Counsel of record
4413.008